**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

TONI VAN DEWALLE,

    Plaintiff,

vs.

CLARION-GOLDFIELD
COMMUNITY SCHOOL DISTRICT,

    Defendant.

No. C10-3071-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   *A. Summary Judgment Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   *B. Timeliness Of Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
      *1. Limitations period* . . . . . . . . . . . . . . . . . . . . . . . . . . 12
      *2. Continuing violations* . . . . . . . . . . . . . . . . . . . . . . . . 15
   *C. Race As A Motivating Factor For Termination* . . . . . . . . . . . . . . . . . 17

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

The plaintiff asserts that she was retaliated against, harassed, and ultimately terminated from her job with a school district in violation of state and federal prohibitions on race discrimination, after she objected to comments about her biracial child. In a Motion for Partial Summary Judgment, the defendant school district asserts that portions of the plaintiff's claims are time barred and that the plaintiff cannot establish a *prima facie* case regarding her claim the school district terminated her because of the race of her child.

## I. INTRODUCTION AND BACKGROUND
### A. Factual Background

I set forth those facts, both undisputed and disputed, sufficient to put in context the parties' arguments concerning defendant's Motion for Partial Summary Judgment. Unless otherwise indicated, the facts recited here are undisputed, at least for purposes of summary judgment. Additional factual allegations and the extent to which they are or are not disputed or material will be discussed, if necessary, in my legal analysis.

Plaintiff Toni Van DeWalle was employed as a teacher's associate in the Clarion Goldfield Community School District ("the District") from November 20, 2007 until August 2009. Van DeWalle is white. She has a biracial son, born on November 6, 2007, whose father is African-American. Van DeWalle's job at the District was as a teacher's associate for a special needs student, Emily Olson. Van DeWalle's entire day was typically spent with Emily that year. At the time Van DeWalle started, Emily was in the second grade. During the 2008-09 school year, Van DeWalle was again assigned to Emily.

Martha Slagle started working in the District as a special education teacher during the 2008-09 school year. Slagle was Emily's teacher for certain subjects in which she

needed additional help.  Van DeWalle spent approximately two hours per day in Slagle's room helping Emily.  Tricia Rosendahl was the elementary principal at the District during the 2008-09 school year.  This was Rosendahl's first year as elementary principal.

November 5, 2008, was the day after the 2008 national elections in which Barack Obama was elected President of the United States.  On this date, Van DeWalle alleges that Slagle told her she was in "mourning" because a black person was elected President.  Slagle is also alleged to have said that Obama was an illegal immigrant and that he didn't have a birth certificate.  Van DeWalle allegedly responded that she had an African-American son and that she was offended by Slagle's comments.  Slagle allegedly retorted by telling Van DeWalle that her son would not amount to anything because of the color of his skin.

Van DeWalle told another teacher, Mrs. Suhumskie, about Slagle's allegedly racial derogatory comments.  Van DeWalle did not complain to Principal Rosendahl.  Suhumskie reported to Principal Rosendahl that Van DeWalle was upset by Slagle's comments Slagle had made concerning the election.  Principal Rosendahl took no immediate action, because Van DeWalle did not complain to her directly about anything.  On the evening of November 6, 2008, Slagle called Principal Rosendahl to complain that Van DeWalle had been telling other staff members that Slagle hated black people.  Van DeWalle denies that she told others on the staff that Slagle hated black people.

Principal Rosendahl called a meeting with Slagle and Van DeWalle for the morning of November 7, 2008.  The purpose of the meeting was to try and resolve the apparent conflict between DeWalle and Slagle.  At the November 7th meeting, Van DeWalle told Principal Rosendahl that Slagle had told her she was in morning because a black person was elected President, and that Slagle had attacked Van DeWalle's son's integrity because

of his race. Slagle either denied making the derogatory statements or she altered them to make them sound inoffensive. Principal Rosendahl believed that Slagle and Van DeWalle simply had a misunderstanding or miscommunication. The meeting concluded with Principal Rosendahl telling Slagle and Van DeWalle, "Come Monday morning, let's put the past in the past and start fresh." November 5, 2008, was the only date Slagle allegedly uttered racially derogatory statements. Slagle made no further derogatory statements to Van DeWalle or in her presence the rest of the school year.

After November 7, 2008, Slagle did not talk to Van DeWalle, but communicated with her by writing notes. Van DeWalle was upset that Slagle would not talk to her. Van DeWalle confided her frustration to Suhumskie, who, in turn, reported it to Principal Rosendahl. Principal Rosendahl called another meeting with Slagle and Van DeWalle to discuss the communication issue. The meeting occurred in February 2009. At the meeting, Principal Rosendahl stated that if Van DeWalle and Slagle thought they could work together and have a good relationship then she would have Slagle stop communicating only with notes. After the meeting, Slagle and Van DeWalle were able to work together and there were no further problems.

Van DeWalle believes Principal Rosendahl treated her unfairly after the November 5, 2008, incident. She claims Principal Rosendahl would look at her in an intimidating way and was not as friendly to her as she was with other teachers. Toward the end of the school year, in late May or early June 2009, Principal Rosendahl held a meeting with all the elementary teacher's associates. She informed them about a new state requirement that teacher's associates would have to be certified within one year. She offered each associate the opportunity to take certification classes over the summer at the District's expense. Van

DeWalle did not take certification classes during the summer of 2009. Van DeWalle did not work for the District during the summer of 2009.

In August 2009, Principal Rosendahl decided not to renew Van DeWalle's contract for the upcoming 2009-10 school year. She recommended to the District superintendent that Van DeWalle's contract not be renewed. The superintendent deferred to Principal Rosendahl's judgment on the contract decision. On August 3, 2009, Principal Rosendahl called Van DeWalle to inform her of her decision not to renew her contract. DeWalle claims Principal Rosendahl said the decision was made in part because "of the incident that happened in the fall." Van DeWalle interpreted that to mean the controversy between her and Slagle over Slagle's allegedly racial statements. Principal Rosendahl claims the reason she did not renew Van DeWalle's contract was because Van DeWalle was not a team player and she did not think Van DeWalle was giving 100 percent to her job. Van DeWalle filed an administrative complaint with the Iowa Civil Rights Commission ("ICRC") on February 22, 2010.

### B. *Procedural Background*

On December 10, 2010, Van DeWalle filed a Complaint against her former employer, the District, alleging the following causes of action: pendent state law claims under the Iowa Civil Rights Act ("ICRA") for racial harassment, discrimination and retaliation, IOWA CODE CH. 216 (Count I); and claims of racial harassment, discrimination and retaliation in violation of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Count II), and 42 U.S.C. § 1981 (Count III).

On February 1, 2012, the District filed their Motion For Partial Summary Judgment. First, the District seeks summary judgment on Van DeWalle's claims for

discrimination, harassment, and retaliation arising out of conduct that occurred before April 29, 2009, which is 300 days before Van DeWalle filed her administrative complaint with Iowa Civil Rights Commission. The District argues that Van DeWalle's claims under both Title VII and the ICRA are time barred because her administrative complaint was not filed within the applicable time limitations for either statute. The District also requests summary judgment on Van DeWalle's claim that the decision not to renew her contract was motivated by racial discrimination. The District argues that there is no evidence that the District's decision not to renew Van DeWalle's employment contract was because of her son's race. The District does not seek summary judgment on Van DeWalle's claim that the District's decision not to renew her contract was in retaliation for her opposition to race discrimination or harassment. On March 16, 2012, Van DeWalle resisted the District's Motion for Partial Summary Judgment, arguing that she can prove a continuing retaliation violation under the ICRA. Van DeWalle further argues that all of her claims are timely under § 1981. Van DeWalle, however, concedes that her racial harassment claims under the ICRA and Title VII "may be" untimely. On March 29, 2012, the District filed its reply brief in support of its Motion for Partial Summary Judgment.

## II. LEGAL ANALYSIS
### A. *Summary Judgment Standards*

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 585 (2007) (internal quotation marks and citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . .").

Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set

forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))).

As the Eighth Circuit Court of Appeals has explained,

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, ---U.S. ----, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) *quoting Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, *quoting Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348.

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (*en banc*).

The Eighth Circuit Court of Appeals recognized in a number of panel decisions that summary judgment is "disfavored" or should be used "sparingly" in employment discrimination cases. *See id.*, at 1043 (collecting such cases in an Appendix). The rationales for this "employment discrimination exception" were that "discrimination cases often turn on inferences rather than on direct evidence. . . .," *E.E.O.C. v. Woodbridge Corp.*, 263 F.3d 812, 814 (8th Cir. 2001) (*en banc*) (citing *Crawford*, 37 F.3d at 1341; *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999)), and that "intent" is generally a central issue in employment discrimination cases. *See, e.g., Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1071 (8th Cir. 1998) (citing *Gill v. Reorganized Sch. Dist. R-6, Festus, Mo.*, 32 F.3d 376, 378 (8th Cir. 1994)); *see Simpson v. Des Moines Water Works*, 425 F.3d 538, 542 (8th Cir. 2005) (noting summary judgment is disfavored in employment discrimination cases because they are "'inherently fact-based.'" (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 806 (8th Cir. 2003))). On the other hand, the Supreme Court recognized that, even in employment discrimination cases, "'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

In its *en banc* decision in *Torgerson*, the Eighth Circuit Court of Appeals expressly rejected the notion that summary judgment in employment discrimination cases is considered under a separate standard, citing *Reeves* and *Celotex*. Instead, the court held as follows:

> Because summary judgment is not disfavored and is designed for "every action," panel statements to the contrary are unauthorized and should not be followed. There is no "discrimination case exception" to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial.

*Torgerson*, 643 F.3d at 1043.

Therefore, I will apply these standards to the defendants' Motion for Partial Summary Judgment.

However, I must first observe that stating the legal principles of summary judgment in employment discrimination cases is a simple task. Applying those principles to the paper record that forms the judicial crucible that decides which plaintiffs may proceed to trial and which get dismissed is far more daunting. Missing in the standard incantation of summary judgment principles is the role of experience. Justice Oliver Wendell Holmes wrote, "The life of the law has not been logic; it has been experience." OLIVER WENDELL HOLMES, THE COMMON LAW 1 (1881). Thus, experience teaches that thoughtful deliberation of summary judgment in employment discrimination cases is grounded in the consideration of each case through a lens filtered by the following observations.

Employment discrimination and retaliation, except in the rarest cases, is difficult to prove. It is perhaps more difficult to prove today—more than forty years after the passage of Title VII and the ADEA, more than twenty years after the passage of the ADA, and nearly two decades after the passage of the FMLA—than during the earlier evolution of these anti-discrimination and anti-retaliation statutes. Today's employers, even those with only a scintilla of sophistication, will neither admit discriminatory or retaliatory intent, nor leave a well-developed trail demonstrating it. *See, e.g., Riordan v. Kempiners*, 831 F.2d 690, 697-98 (7th Cir. 1987). Indeed, the Fifth Circuit Court of Appeals

recognized more than thirty-five years ago, that "[a]s patently discriminatory practices become outlawed, those employers bent on pursuing a general policy declared illegal by Congressional mandate will undoubtedly devise more sophisticated methods to perpetuate discrimination among employees." *Rogers v. EEOC*, 454 F.2d 234, 239 (5th Cir. 1971) (later relied on by the Supreme Court in *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65-67 (1986), as one of the principal authorities supporting recognition of a cause of action for hostile environment sexual harassment under Title VII).

My experience suggests the truth of that observation. Because adverse employment actions almost always involve a high degree of discretion, and most plaintiffs in employment discrimination and retaliation cases are at will, it is a simple task for employers to concoct plausible reasons for virtually any adverse employment action ranging from failure to hire to discharge. This is especially true, because the very best workers are seldom employment discrimination and retaliation plaintiffs due to sheer economics: Because the economic costs to the employer for discrimination or retaliation are proportional to the caliber of the employee, discrimination or retaliation against the best employees is the least cost effective. *See, e.g., id.* Rather, discrimination and retaliation plaintiffs tend to be those average or below-average workers—equally protected by Title VII, the ADA, the ADEA, or the FMLA—for whom plausible rationales for adverse employment actions are readily fabricated by employers with even a meager imagination. *See, e.g., id.*

Consequently, with both the legal standards for summary judgment and the teachings of experience in hand, I turn to consideration of the parties' arguments for and against partial summary judgment.

## B. Timeliness Of Claims

Preliminarily, the District contends that Van DeWalle's claims of discrimination, racial harassment and, retaliation, based on conduct that occurred before April 29, 2009, are time barred under Title VII and the ICRA.[1]

### 1. Limitations period

Title VII makes it an unlawful employment practice for an employer to discriminate against an individual because of the individual's race. 42 U.S.C. § 2000e-2(a). Similarly, the ICRA also prohibits discrimination based upon race. *See* IOWA CODE § 216.6(1)(a). Title VII and the ICRA also prohibit retaliation against employees who allege a violation of Title VII or the ICRA by their employers, as well as those employees who participate or assist in an investigation of such a complaint.[2] *See* 42 U.S.C. § 2000e-3(a); IOWA CODE § 216.11. Although the statutes prohibit the same types of conduct by an employer, they differ with respect to the time limitations in which a complainant must comply.

---

[1] The District does not challenge the timeliness of Van DeWalle's § 1981 claim.

[2] Title VII makes it unlawful for an employer to discriminate against an employee for "oppos[ing] any practice made unlawful by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). The ICRA makes it illegal for an employer
> to discriminate or retaliate against another person in any of the
> rights protected against discrimination by this chapter because
> such person has lawfully opposed any practice forbidden under
> this chapter, obeys this chapter, or has filed a complaint,
> testified, or assisted in any proceeding under this chapter.

IOWA CODE § 216.11(2).

*Compare* 42 U.S.C. § 2000e-5(e)(1) (Title VII), *with* IOWA CODE § 216.15(13) (ICRA).[3] However, since Van DeWalle filed her charges concurrently with the ICRC and the EEOC, both Title VII and the ICRA require a discriminatory incident to have occurred

---

[3] Title VII provides:

> (1) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

42 U.S.C. § 42 U.S.C. § 2000e-5(e)(1). The ICRA's provision reads:

> 13. Except as provided in section 614.8, a claim under this chapter shall not be maintained unless a complaint is filed with the commission within three hundred days after the alleged discriminatory or unfair practice occurred.

IOWA CODE § 216.15(3).

within the 300 days preceding the filing of an administrative complaint.[4] Accordingly, Van DeWalle's claims are time barred if they accrued prior to April 29, 2009.

Clearly, most of the allegations asserted by Van DeWalle, with the exception of assertions regarding her contract not being renewed and other retaliatory acts by Principal Rosendahl, predate the 300-day limitation period. Van DeWalle had no further conflicts with Slagle after their official meeting in February 2009. Accordingly, the incidents predating the limitations period are time barred unless they can be related to a timely incident as a "series of separate but related acts" amounting to a continuing violation. *See National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 117 (2002) (Title VII); *Farmland Foods, Inc. v. Dubuque Human Rights Comm'n,* 672 N.W.2d 733, 741 (Iowa 2003) (ICRA). In order to establish she exhausted her administrative remedies as to the whole of the alleged harassment and retaliation, Van DeWalle is required to generate a genuine issue of material fact that the harassment and retaliation predating the limitations period was part of "continuing violation" with the harassment and retaliation that occurred within the relevant time period. Van DeWalle concedes that she cannot make a showing

---

[4]Complaints brought under Title VII for unlawful employment practices generally must be filed with the EEOC within 180 days after the occurrence of the alleged act. 42 U.S.C. § 2000e-5(e)(1). However, if the aggrieved person first institutes proceedings with a state agency empowered to prosecute discriminatory employment practices, the time limit for filing with the EEOC is extended to 300 days. *Id.* Thus, under Title VII, the time in which a complainant has to file an administrative charge varies, based upon whether the person aggrieved has initially instituted proceedings with a state or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof. *Id.* States that maintain such agencies are known as "deferral states." *See, e. g., Worthington v. Union Pac. R.R.,* 948 F.2d 477, 479 n. 3 (8th Cir. 1991). Iowa is a deferral state. *See Millage v. City of Sioux City,* 258 F. Supp. 2d 976, 984-86 (N.D. Iowa 2003) (identifying the ICRC as a deferral state agency).

of a continuing violation on her claims of racial discrimination and harassment. Thus, the District's Motion for Partial Summary Judgment is granted as to Van DeWalle's claims of racial discrimination and harassment under the ICRA and Title VII. Van DeWalle, however, asserts that she can make out a continuing violation with regard to the retaliation against her which occurred within the relevant time period.[5] The District counters, arguing that Principal Rosendahl's conduct toward Van DeWalle before April 29, 2009, was not sufficiently adverse to constitute retaliation.

### 2. *Continuing violations*

In *Morgan,* the United States Supreme Court indicated that, with respect to hostile environment claims, where each act is related to the whole, "the employee need only file a charge within [the statutory period] of any act that is part of the hostile work environment." *Morgan*, 536 U.S. at 118. However, the *Morgan* Court pointed out that the continuing violations doctrine does not apply to Title VII claims alleging discrete acts of retaliation.[6] *See id.* at 104–05. Each of Principal Rosendahl's alleged acts of

---

[5]In *Farmland Foods,* the Iowa Supreme Court cited its decision in *Hy-Vee Food Stores, Inc. v. Iowa Civil Rights Comm'n,* 453 N.W.2d 512 (Iowa 1990). In the latter case, the Iowa Supreme Court noted the ICRA is patterned after Title VII. *Hy-Vee Food Stores, Inc.,* 453 N.W.2d at 527. Based on the similarities between the federal and state statutes, the court considered federal cases on the "continuing violations" doctrine instructive. *Id.* (citing *Annear v. State,* 419 N.W.2d 377, 379 (Iowa 1988)). Consequently, I will utilize federal case law to analyze the timeliness of DeWalle's claims under both federal and state law.

[6]In *Morgan*, the Court instructed that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each
(continued…)

retaliation during this period were discrete acts.[7] Therefore, Principal Rosendahl's retaliatory acts occurring more than 300 days prior to the filing of an administrative charge are barred even where they relate to acts alleged in a timely filed charge. *Id.* Van DeWalle filed the retaliation charge related to this suit on February 22, 2010. Therefore, she may only include acts of retaliation occurring 300 days prior to February 22, 2010.

---

[6](…continued)
retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114.

[7]Alternatively, I conclude that the alleged snubs, though surely an unpleasant experience, are insufficient to support a claim of retaliation. A *prima facie* case of retaliation requires a plaintiff to show, *inter alia*, that: a reasonable employee would have found the challenged retaliatory action materially adverse. *Brenneman v. Famous Dave's of Am., Inc.,* 507 F.3d 1139, 1146 (8th Cir. 2007). The instances of ostracism that Van DeWalle allegedly experienced at the hands of Principal Rosendahl amount to no more than "nonactionable petty slights" under the United States Supreme Court's decision in *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 69 (2006). Van DeWalle alleges that she received the silent treatment from Principal Rosendahl. Ostracism of this variety is not materially adverse. *See id.* ("A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination."); *Recio v. Creighton Univ.*, 521 F.3d 934, 940-41 (8th Cir. 2008) (concluding that "silent treatment" by college faculty not materially adverse); *Mlynczak v. Bodman,* 442 F.3d 1050, 1061 (7th Cir. 2006) (holding "shunn[ing]" by co-workers not actionable retaliation); *see also Somoza v. Univ. of Denver,* 513 F.3d 1206, 1218 (10th Cir. 2008) ("[Plaintiffs] may have had to withstand colleagues that do not like them, are rude, and may be generally disagreeable people. However, [a] court's obligation is not to mandate that certain individuals work on their interpersonal skills and cease engaging in inter-departmental personality conflicts.").

16

Accordingly, Van DeWalle is precluded from asserting any pre-April 29, 2009, conduct by Principal Rosendahl or Slagle as specific acts of retaliation.[8]

### C. *Race As A Motivating Factor For Termination*

The District also seeks summary judgment on Van DeWalle's Title VII and ICRA claims that the District discriminated against her by not renewing her employment contract because of the race of her child. The District asserts that Van DeWalle cannot establish a prima facie case of discrimination under either Title VII or the ICRA because Slagle, who Van DeWalle claims had racial animus, was not involved in the decision whether or not to renew Van DeWalle's contact. Van DeWalle "agrees that Rosendahl's decision to terminate was not directly related to the race of her child." Van DeWalle's Br. at 9. Accordingly, this portion of the District's Partial Motion for Summary is also granted.

### III. CONCLUSION

For the reasons discussed above, the District's Motion for Partial Summary Judgment is **granted** as to Van DeWalle's Title VII and ICRA claims of discrimination, racial harassment, and retaliation based on conduct that occurred before April 29, 2009. The District's Motion for Partial Summary Judgment is also **granted** as to Van DeWalle's Title VII and ICRA claims that the District discriminated against her by not renewing her employment contract because of the race of her child.

---

[8]Van DeWalle, however, may be permitted to use time barred acts as background evidence in support of a timely claim.

**IT IS SO ORDERED.**

**DATED** this 25th day of April, 2012.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA