**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

TONI VAN DEWALLE,

        Plaintiff,

vs.

CLARION-GOLDFIELD COMMUNITY
SCHOOL DISTRICT,

        Defendant.

No. C 10-3071-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING THE PARTIES'
MOTIONS IN LIMINE**

<u>FILED UNDER SEAL</u>

---

**TABLE OF CONTENTS**

I.   **INTRODUCTION**................................................................2
    *A.   Factual Background* ................................................2
    *B.   Procedural Background* ...........................................4

II.   **LEGAL ANALYSIS** .......................................................6
    *A.   Rule 104 And Preliminary Questions Of Admissibility* .....6
    *B.   Van DeWalle's Motion In Limine* ..............................6
        *1.   Relevance and prejudice standards* ....................6
        *2.   Evidence of receipt of unemployment benefits*.........9
            *a.   Arguments of the parties* .......................9
            *b.   Analysis* ......................................10
        *3.   Evidence regarding Slagle's Korean and African-American
           relatives*..................................................14
            *a.   Arguments of the parties* ......................14
            *b.   Analysis* ......................................15
    *C.   The District's Motion In Limine* ...............................18
        *1.   Evidence of liability insurance*.........................18
            *a.   Arguments of the parties* ......................18
            *b.   Analysis* ......................................18

       2.     *Evidence of Slagle's alleged racist statements to others* .......... 23
          a.     *Arguments of the parties* ....................................... 23
          b.     *Analysis* ......................................................... 24
              i.     *Admission through Van DeWalle's testimony* ...... 24
              ii.    *Admission through testimony of others* .............. 24

III.    CONCLUSION ................................................................ 28

A former teacher's associate alleges that she suffered discrimination and harassment in her employment because she has a biracial child and retaliation ending in termination because she complained about such treatment. Both the teacher's associate and the school district that had employed her have filed motions in limine in anticipation of a jury trial set to begin June 25, 2012. Among other things, the teacher's associate seeks to exclude evidence of her application for and receipt of unemployment compensation and evidence that her alleged harasser had African American members of her extended family, and the school district seeks to exclude evidence of the alleged harasser's alleged racist statements to others.

## I.    INTRODUCTION

### A.    *Factual Background*

I set forth the factual background to this lawsuit in my opinion on the defendants' motion for partial summary judgment. *See Van DeWalle v. Clarion-*

*Goldfield Community Sch. Dist.*, 2012 WL, 1425876, *1-*2 (N.D. Iowa, April 25, 2012) (slip op.). Therefore, I will not repeat that full discussion here.

For present purposes, suffice it to say that plaintiff Toni Van DeWalle was employed as a teacher's associate in the Clarion-Goldfield Community School District (the District) from November 20, 2007, until August 2009. Van DeWalle alleges that, in November 2008, Martha Slagle, the special education teacher for the student that she assisted, made derogatory statements about the election of Barack Obama as President of the United States and about Van DeWalle's biracial son. Van DeWalle alleges that the school principal, Tricia Rosendahl, held a meeting, which Rosendahl believed resolved Van DeWalle's and Slagle's dispute as a "misunderstanding" or "miscommunication." However, Van DeWalle alleges that, after that meeting, Slagle would only communicate with her through written notes, and Rosendahl would look at her in an intimidating way and was not as friendly with her as she was with other teachers. Rosendahl held another meeting in February 2009 to address Van DeWalle's communication problem with Slagle, and the parties agree that Van DeWalle and Slagle were able to work together without further problems.

Van DeWalle alleges that, near the end of the 2008-2009 school year, Rosendahl held a meeting with all teacher's associates to inform them that a new state requirement would require them to be certified within one year and that the District would pay for certification classes over the summer. Van DeWalle did not take any certification classes or work for the District during the summer of 2009.

In August 2009, Rosendahl decided that she did not want to renew Van DeWalle's contract for the 2009-2010 school year, and the District superintendent deferred to her decision. Therefore, on August 3, 2009, Rosendahl informed Van DeWalle by telephone that her contract would not be renewed. Van DeWalle alleges that Rosendahl informed her that the decision was, in part, because "of the incident that

3

happened in the fall," which Van DeWalle took to mean her conflict with Slagle. Rosendahl asserts that the reason that she did not renew Van DeWalle's contract was that Van DeWalle was not a team player and was not giving 100 percent to her job.

## B.     Procedural Background

Van DeWalle filed an administrative complaint with the Iowa Civil Rights Commission (ICRC) against the District on February 22, 2010, then filed a Complaint (docket no. 1) commencing this lawsuit against the District on December 10, 2010. Van DeWalle alleged claims for racial harassment, discrimination, and retaliation in violation of the Iowa Civil Rights Act (ICRA), IOWA CODE CH. 216; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; and 42 U.S.C. § 1981. The District denied those claims in an Answer (docket no. 4), filed February 14, 2011.

On April 25, 2012, I filed a ruling (docket no. 18), granting the District's February 1, 2012, Motion For Partial Summary Judgment (docket no. 11) as to Van De Walle's Title VII and ICRA claims of racial discrimination, racial harassment, and retaliation on conduct that occurred before April 29, 2009, on the ground that those portions of her claims were time-barred, and on Van DeWalle's Title VII and ICRA claims that the District discriminated against her by not renewing her employment contract because of the race of her child. That decision left for trial Van DeWalle's Title VII and ICRA claims of retaliation for opposing racial discrimination or racial harassment and all of her § 1981 claims.

In anticipation of a jury trial in this matter, which is set to begin June 25, 2012, both Van DeWalle and the District filed motions in limine. More specifically, on May 15, 2012, Van DeWalle filed her Motion In Limine (docket no. 19), seeking the following: (1) exclusion of evidence of her prior civil and criminal history, pursuant to Rules 401, 402, 403, and 404(b) of the Federal Rules of Evidence, as irrelevant and

unduly prejudicial, misleading, and confusing; (2) exclusion of evidence of her receipt of unemployment benefits, pursuant to Rules 401 and 402, as irrelevant, pursuant to the collateral source rule; and (3) exclusion of photographs and testimony regarding Slagle's Korean and African-American relatives, pursuant to Rules 401, 402, and 403, as irrelevant to show that Slagle would not have made racially charged statements and lacked a racially discriminatory animus, and as more prejudicial than probative, because special treatment of some persons of other races does not preclude discrimination against another. On May 29, 2012, the District filed a Resistance (docket no. 21), resisting only exclusion of the second and third categories of evidence.

On May 16, 2012, the District filed its own Motion In Limine (docket no. 20), seeking the following: (1) exclusion of evidence of settlement negotiations, pursuant to Rule 408; (2) exclusion of evidence of liability insurance, pursuant to Rule 411; and (3) exclusion of evidence concerning Slagle's alleged racist statements to others out of Van DeWalle's presence, if offered through Van DeWalle, pursuant to Rules 801 and 802, and if offered through persons who allegedly heard such statements, pursuant to Rule 403, as of little or no probative value and as unfairly prejudicial, confusing, misleading, and a waste of time. In a Resistance (docket no. 22), Van DeWalle does not resist exclusion of the evidence in the first or second categories, with the caveat that her counsel should be allowed to ask if any potential jury member or any relative of a potential jury member is an employee, stockholder, director, or officer of the District's liability insurer, but she does resist exclusion of evidence, through others, that Slagle made racist comments to others, in their presence.

## II.    LEGAL ANALYSIS

### A.    *Rule 104 And Preliminary Questions Of Admissibility*

As a preliminary matter, I note that Rule 104 of the Federal Rules of Evidence provides, generally, that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court. . . ." FED. R. EVID. 104.  Such preliminary questions may depend upon such things as whether the factual conditions or legal standards for the admission of certain evidence have been met.  *See id.*, Advisory Committee Notes, 1972 Proposed Rule.  This rule, like the other rules of evidence, must be "construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that truth may be ascertained and proceedings justly determined." FED. R. EVID. 102.  I conclude that preliminary determination of the admissibility of the evidence put at issue in the parties' Motions In Limine will likely serve the ends of a fair and expeditious presentation of issues to the jury.  Therefore, I turn to consideration of the admissibility of the categories of evidence still in dispute.

### B.    *Van DeWalle's Motion In Limine*

Van DeWalle challenges the admissibility of the two categories of evidence in her Motion In Limine that are still in dispute on relevance and prejudice grounds. Therefore, I will begin my analysis of the disputed portions of Van DeWalle's Motion In Limine with consideration of the standards for exclusion of evidence on relevance and prejudice grounds, pursuant to Rules 401, 402, and 403.

### 1.    *Relevance and prejudice standards*

Rule 401 of the Federal Rules of Evidence defines relevant evidence as evidence that "(a) . . . has any tendency to make a fact more or less probable than it would be

without the evidence; and (b) the fact is of consequence in determining the action." Rule 402 provides that relevant evidence is generally admissible, but irrelevant evidence is not.[1]

Rule 403 provides for exclusion of even relevant evidence on various grounds, as follows:

> The court may exclude relevant evidence if its probabtive value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

FED. R. EVID. 403.[2] As the Eighth Circuit Court of Appeals recently explained,

> [U]nder Rule 403, the [challenged evidence's] probative value must be *substantially* outweighed by *unfair* prejudice. "Evidence is not unfairly prejudicial because it tends to prove guilt, but because it tends to encourage the jury to find guilt from improper reasoning. Whether there was unfair prejudice depends on whether there was an undue tendency to suggest decision on an improper basis." *United States v. Farrington*, 499 F.3d 854, 859 (8th Cir. 2007) (quotations omitted).

*United States v. Muhlenbruch*, 634 F.3d 987, 1001 (8th Cir. 2011) (emphasis in the original); *United States v. Myers*, 503 F.3d 676, 681 (8th Cir. 2007) ("Rule 403 'does not offer protection against evidence that is merely prejudicial in the sense of being

---

[1] Rule 401 and Rule 402 were both amended in the course of amendments to the Federal Rules of Evidence in 2011, effective December 1, 2011. Like other amendments to the Federal Rules of Evidence in 2011, these amendments were "part of the general restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules," were "intended to be stylistic only," and were not intended "to change any result in any ruling on evidence admissibility." FED. R. EVID. 401, Advisory Committee Notes, 2011 Amendments; FED. R. EVID. 402, Advisory Committee Notes, 2011 Amendments.

[2] Stylistic amendments to this rule also became effective on December 1, 2011.

detrimental to a party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis.'" (quoting *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981), *aff'd sub nom. Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983)).

The Advisory Committee Notes to Rule 403 explain that a decision on an "improper basis" is "commonly, though not necessarily, an emotional one." FED. R. EVID. 403, Advisory Committee Notes; *see also United States v. Jiminez*, 487 F.3d 1140, 1145 (8th Cir. 2007) (quoting this note); *United States v. Dierling*, 131 F.3d 722, 730-31 (8th Cir. 1997) (considering whether evidence was unfairly prejudicial, because it might lead to a decision on an improper basis, where it purportedly had no connection to the charged offense and revealed grisly or violent behavior that made the defendant appear "dangerous"). Unfairly prejudicial evidence has also been described as evidence that is "'so inflammatory on [its] face as to divert the jury's attention from the material issues in the trial.'" *United States v. Adams*, 401 F.3d 886, 900 (8th Cir. 2005) (quoting *United States v. Shoffner*, 71 F.3d 1429, 1433 (8th Cir. 1995)). "Under Rule 403, district courts have broad discretion to assess unfair prejudice, and are reversed only for an abuse of discretion." *Myers*, 503 F.3d at 681 (citing *United States v. Henderson*, 416 F.3d 686, 693 (8th Cir. 2005), *cert. denied*, 546 U.S. 1175, 126 S. Ct. 1343, 164 L. Ed. 2d 57 (2006)); *accord Muhlenbruch*, 634 F.3d at 1001 ("We review the district court's decision not to exclude evidence under Rule 403 for an abuse of discretion.").

Where evidence may otherwise be inadmissible pursuant to Rule 403, the Eighth Circuit Court of Appeals and the Federal Rules of Evidence recognize that a limiting instruction on the proper uses of certain evidence may mitigate potential prejudice from such evidence. *See, e.g, United States v. Cowling*, 648 F.3d 690, 699 (8th Cir. 2011) ("Moreover, the risk of unfair prejudice was reduced by a cautionary instruction to the

jury, given when the evidence was first admitted."); *United States v. Young*, 644 F.3d 757, 761 (8th Cir. 2011) (concluding that the district court did not abuse its discretion in admitting evidence for the limited purpose set forth in its instruction); *United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006) ("[A] limiting instruction [concerning proper use of evidence of a prior conviction] diminishes the danger of unfair prejudice arising from the admission of the evidence."); *see also* FED. R. EVID. 105 (requiring a limiting instruction when the court admits evidence for a limited purpose).

With these rules in mind, I turn to consideration of the admissibility of the evidence identified in Van DeWalle's Motion In Limine that is still in dispute.

### 2. *Evidence of receipt of unemployment benefits*

The first category of evidence in Van DeWalle's Motion that is still in dispute is evidence of her receipt of unemployment compensation benefits. The District argues that this evidence is admissible pursuant to a provision of the ICRA.

#### a. *Arguments of the parties*

Van DeWalle seeks exclusion of this evidence pursuant to Rules 401 and 402, as irrelevant, because it is subject to the collateral source rule. She argues that the Eighth Circuit Court of Appeals has adopted the majority rule that unemployment compensation should not be deducted from backpay, because a backpay award not only serves to make the victim whole, but also deters future discrimination, and a deduction of unemployment compensation would give an employer who engaged in discrimination a windfall.

The District argues that IOWA CODE § 216.15(9)(a)(1) requires deduction of unemployment compensation, if the remedy for a violation of Chapter 216 is "hiring, reinstatement, or upgrading of employees with or without pay." Thus, the District argues that, to the extent that Van DeWalle seeks a remedy under § 216.15(9)(a)(1),

evidence of unemployment compensation is admissible to reduce the backpay otherwise awarded.

### b.    Analysis

Van DeWalle is correct that the Eighth Circuit Court of Appeals has rejected deduction of unemployment compensation or workers' compensation benefits from awards of backpay in employment discrimination cases.  As the Eighth Circuit Court of Appeals explained,

> We also reject Datanet's argument that the district court erred in failing to deduct worker's compensation benefits paid by an insurance company from Moysis' back pay award.  In *Gaworski v. ITT Comm. Fin. Corp.*, 17 F.3d 1104, 1112 (8th Cir.), *cert. denied*, 513 U.S. 946, 115 S.Ct. 355, 130 L.Ed.2d 310 (1994), this court stated that "'an employer can not set up in mitigation of damages in a tort action by an injured employee indemnity from a collateral source, such as insurance or compensation or benefits under a Workmen's Compensation Act, even where the defendant has contributed to the fund.'" (quoting *Chicago Great W. Ry. v. Peeler*, 140 F.2d 865, 868 (8th Cir. 1944)).  We then applied the "collateral source rule" and refused to deduct unemployment benefits from a back pay award in an age discrimination action, noting the rule "gains in significance in the context of employment discrimination claims." *Id.*  We explained this is so because back pay awards not only serve to make a victim whole, they also "deter future discrimination." *Id.* at 1113.  If the unemployment benefits were deducted, this court reasoned that it would be "less costly for the employer to wrongfully terminate a protected employee." *Id.*  Put another way, deduction of the benefits would constitute "a windfall to the employer who committed the illegal discrimination." *Id.*  The same reasoning applies in the circumstances of this case. *See Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1171 (6th Cir. 1996) ("Like unemployment benefits, worker's compensation benefits are a collateral source that

should not be deducted from back pay."), *amended on other grounds*, 97 F.3d 833 (6th Cir. 1996).

*Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002); *see also Arneson v. Callahan*, 128 F.3d 1243, 1247-48 (8th Cir. 1997) (no reduction of backpay for disability retirement benefits on a Rehabilitation Act claim); *Smith v. World Ins. Co.*, 38 F.3d 1456, 1465 (8th Cir. 1994) (no reduction of backpay for pension benefits received on account of the employee's wrongful discharge on an ADEA claim). Thus, evidence of any unemployment compensation that Van DeWalle received would not be admissible to reduce her backpay award for discrimination, harassment, or retaliation in violation of federal law.

Even so, the District argues that, to the extent that Van DeWalle seeks a remedy for violations of the ICRA under § 216.15(9)(a)(1), unemployment compensation is admissible to reduce the backpay otherwise awarded. This provision of the ICRA provides that "remedial action" by the ICRC under the ICRA "includes but is not limited to the following: (1) Hiring, reinstatement or upgrading of employees with or without pay." IOWA CODE § 216.15(9)(a)(1). The District is correct that this provision adds, "Interim earned income and unemployment compensation shall operate to reduce the pay otherwise allowable." *Id.* Section 216.6(6) provides, in turn, that "[t]he district court may grant any relief in an action under this section which is authorized by section 216.15, subsection 9, to be issued by the commission." IOWA CODE § 216.6. Thus, the reduction of pay by the amount of unemployment compensation earned in the interim also applies in a court action on an ICRA claim.

Nevertheless, there are problems with the District's reliance on § 216.15(9)(a)(1) as the basis for admitting evidence of a plaintiff's unemployment compensation in a jury trial of an ICRA plaintiff's claims. First, in light of the plain language of § 216.15(9)(a)(1), the exclusion of unemployment compensation from the remedy only

applies in the circumstances of "remedial action" involving "[h]iring, reinstatement or upgrading of employees." not to every remedy available under the ICRA. Indeed, § 216.15(9)(a)(9), which provides for "damages for an injury caused by the discriminatory or unfair practice," does not exclude employment compensation from the damages award. Second, even if Van DeWalle's prayer for relief on her ICRA claims can be construed to request "reinstatement" as a remedy, within the meaning of § 216.15(9)(a)(1), which would require a reduction for unemployment compensation that she received, *see* Complaint, Count I, prayer (praying, *inter alia*, to be "made whole in pay and benefits as if she had not been terminated" and other just and proper relief), she also expressly prayed for damages for her injuries, within the meaning of § 216.15(9)(a)(9), which require no such reduction. *See* Complaint, Count I, prayer (also praying, *inter alia*, for "compensatory damages" and "lost earnings"). Third, the Iowa Supreme Court has described the "reinstatement" remedy under the ICRA provided by § 216.15(9) (via § 216.6) as an equitable remedy from the court, rather than as a remedy from the jury. *See Deboom v. Raining Rose, Inc.*, 772 N.W.2d 1, 12 (Iowa 2009). Thus, while it would be appropriate for me to hear evidence, out of the presence of the jury, concerning unemployment compensation that Van DeWalle received, in my consideration of equitable remedies under § 216.15(9)(a)(1), I find that nothing in that provision or elsewhere in the ICRA requires me to admit such evidence in proceedings before the jury.

There are further considerations. The Iowa Supreme Court has not expressly considered whether § 216.15(9)(a)(1) would permit evidence of unemployment compensation in a jury trial on an ICRA employment claim, nor has that court adopted the "collateral source rule" in employment cases under the ICRA, as the Eighth Circuit Court of Appeals has in federal employment discrimination cases. Nevertheless, the Iowa Supreme Court's rationale for application of the collateral source rule in personal

injury cases parallels the rationale for the rule in federal discrimination cases. As the Iowa Supreme Court has explained, "The rule prevents the jury from reducing the tortfeasor's obligation to make full restitution for the injuries caused by the tortfeasor's negligence." *Pexa v. Auto Owners Ins. Co.*, 686 N.W.2d 150, 156 (Iowa 2004) (citing *Schonberger v. Roberts*, 456 N.W.2d 201, 202 (Iowa 1990)), *and compare Moysis*, 278 F.3d at 828 (explaining that the reason that the collateral source rule bars evidence of unemployment compensation in employment cases is not only to make the plaintiff whole, but to punish the defendant and to prevent the defendant who has committed employment discrimination from obtaining a windfall (citing *Gaworski*, 17 F.3d at 1112-13)). I think it likely that the Iowa Supreme Court would conclude that § 216.15(9)(a)(1) does not require, and that the collateral source rule would bar, evidence of unemployment compensation in a jury trial of a discrimination claim in which actual, compensatory, or "backpay" damages were sought.

Finally, even if somehow otherwise admissible in proceedings before the jury on the ICRA claims, I find that evidence of unemployment compensation that Van DeWalle received should be excluded pursuant to Rule 403 as potentially unduly confusing and misleading to the jury. FED. R. EVID. 403. Such evidence is *not* admissible on the *federal* claims. *See Moysis*, 278 F.3d at 828. Furthermore, such evidence could potentially prejudice not only the proper determination of damages but the proper determination of liability on Van DeWalle's federal claims, because it could lead the jury to conclude that Van DeWalle's economic injuries have been adequately compensated and, hence, to conclude that she suffered no injury at all. The Advisory Committee Notes to Rule 403 explain that a decision on an "improper basis" is "commonly, though not necessarily, an emotional one." FED. R. EVID. 403, Advisory Committee Notes (observing that the rule is intended to avoid decision on an "improper basis," which is "commonly, though not necessarily, an emotional one"); *see also*

*Jiminez*, 487 F.3d at 1145 (quoting this note). I am not convinced that any limiting instruction could prevent such prejudice or confusion, and certainly the District has not offered any proposed limiting instruction. *Compare Cowling*, 648 F.3d at 699 (recognizing that a limiting instruction on the proper uses of certain evidence may mitigate potential prejudice from such evidence).

This part of Van DeWalle's Motion In Limine will be granted to the extent that evidence of unemployment compensation that she received will *not* be admissible in proceedings before the jury.

### 3. Evidence regarding Slagle's Korean and African-American relatives

Van DeWalle also seeks exclusion of photographs and testimony regarding Slagle's Korean and African-American relatives, including Slagle's sister's three adopted children from Korea, a mixed-race child of one of those adopted nieces, and the mixed-race child of another niece. The District argues that this evidence is admissible.

### a. Arguments of the parties

Van DeWalle argues that such evidence should be excluded, pursuant to Rules 401, 402, and 403, notwithstanding the District's anticipated argument that such evidence shows that Slagle could not possibly harbor any racial animus, because members of her extended family are non-white or mixed-race. Van DeWalle argues that such evidence should be excluded pursuant to Rules 401 and 402, because it is not probative of any issue, where it does not make it more or less likely that Slagle made the alleged racially charged statements or make any other fact more or less probable. She also argues that it should be excluded pursuant to Rule 403, because allowing such evidence would lead to the jury becoming unnecessarily distracted by an irrelevant issue. Somewhat more specifically, she argues that courts have held that an employer

may not use its special treatment of some black applicants as a defense to justify discrimination against other black applicants, because each individual is entitled to be free from discrimination. She also argues that, because bias is irrational, it may not follow a consistent pattern. Thus, she argues that it is quite possible for an individual to hold no biases against mixed-race African American children, but still believe that, by the time such people grow up in African American culture, they will become loud, aggressive, rude, and otherwise conform to stereotypes attributed to African American adults.

The District argues that such evidence is probative of Slagle's racial views and is relevant to the determination of whether it is plausible that Slagle made racially offensive statements, as Van DeWalle claims. The District argues that all of the cases that Van DeWalle cites involved claims of disparate treatment, not racial harassment. The District argues that this case, on the other hand, relies upon direct evidence of alleged racially offensive statements by Slagle, the alleged harasser, about Van DeWalle's son. The District argues that, under these circumstances, it should be permitted to offer evidence about Slagle's family relationships to show that she lacks racial animus and would not have uttered the statements that Van DeWalle (and perhaps others) will attribute to her.

### b. Analysis

Van DeWalle relies primarily on the Supreme Court's decision in *Connecticut v. Teal*, 457 U.S. 440 (1982). In *Teal*, the Court observed, "It is clear that Congress never intended to give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group." 457 U.S. at 455. The Court distinguished between "unlawful discrimination" and "discriminatory intent":

The Court has stated that a nondiscriminatory "bottom line" and an employer's good-faith efforts to achieve a nondiscriminatory work force, might in some cases assist an employer in rebutting the inference that particular action had been intentionally discriminatory: "Proof that [a] work force was racially balanced or that it contained a disproportionately high percentage of minority employees is not wholly irrelevant on the issue of intent when that issue is yet to be decided." *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 580, 98 S.Ct. 2943, 2951, 57 L.Ed.2d 957 (1978). *See also Teamsters v. United States*, 431 U.S. 324, 340, n. 20, 97 S.Ct. 1843, 1856-1857, n.20, 52 L.Ed.2d 396 (1977). But resolution of the factual question of intent is not what is at issue in this case. Rather, petitioners seek simply to justify discrimination against respondents on the basis of their favorable treatment of other members of respondents' racial group. Under Title VII, "[a] racially balanced work force cannot immunize an employer from liability for specific acts of discrimination." *Furnco Construction Corp. v. Waters*, 438 U.S., at 579, 98 S.Ct., at 2950-2951.

*Teal*, 457 U.S. at 454.

In this case, it does not appear that the District is offering evidence that Slagle, the alleged harasser, had mixed race relatives to "justify" racially harassing comments by Slagle about Van DeWalle's son, but to show that Slagle lacked any racial animus. *See id.* It is also true that discriminatory intent (or racial animus) is at issue here and has not been decided. *See id.; see also Green v. Franklin Nat'l Bank of Minnesota*, 459 F.3d 903, 910 (8th Cir. 2006) (noting that an element of a racially hostile work environment is that "the harassment was based upon race," and that evidence of the harasser's racial animus is indicative of whether harassment is based on race). Nevertheless, I do not believe that evidence of Slagle's Korean and African American relatives is probative of any question in this case.

I believe that a much nearer relationship to family members of another race is required for that relationship to have any probative value on the alleged harasser's lack of racial animus. For example, if the evidence showed that the alleged harasser had adopted children of another race, had mixed-race children, or had married a person of another race, that evidence would be probative of the alleged harasser's lack of racial animus, because it would be based on that person's own actions. Here, however, the actions of Slagle's sisters in adopting children of another race and other relatives having mixed-race children do not involve Slagle's own actions and, as such, reveal little about Slagle's own attitudes and feelings about other races. Because racial bias is irrational and may not follow a consistent pattern, *see Furnco Constr. Corp.*, 438 U.S. at 579, Slagle's behavior toward relatives of another race brought into the family by others also provides little clue to her attitudes or behavior toward mixed-race children or persons of other races generally. Thus, the evidence is not admissible pursuant to Rules 401 and 402 on relevance grounds. Even assuming that such evidence has any probative value, it is not admissible pursuant to Rule 403, because what little probative value it may have is substantially outweighed by its potential for undue prejudice, confusion of the issues, and a "mini-trial" on Slagle's attitudes toward her relatives of another race that are not directly at issue in this case. *See* FED. R. EVID. 403 (permitting exclusion of probative evidence on the basis that it may mislead or confuse the jury); *Chism v. CNH Am., L.L.C.*, 638 F.3d 637, 642 (8th Cir. 2011) (recognized that Rule 403 may properly be used to exclude evidence that could result in a "trial within a trial" that is not justified the probative value of such evidence).

Therefore, the part of Van DeWalle's Motion In Limine seeking exclusion of photographs and testimony regarding Slagle's Korean and African-American relatives is granted.

### C.     The District's Motion In Limine

#### 1.     Evidence of liability insurance

##### a.     Arguments of the parties

The first part of the District's Motion In Limine that is still in dispute, at least to some extent, seeks exclusion of evidence of liability insurance, pursuant to Rule 411. As noted above, Van DeWalle represents that she has no intent to offer any such evidence, even to attempt to prove a witness's bias or prejudice.  On the other hand, Van DeWalle asserts that she should be allowed to ask prospective jurors, "Are you or any member of your family an employee, stockholder, director, or officer of Employers Mutual Casualty Company or EMC Insurance Companies?"  She cites Iowa cases holding that such an inquiry is proper to assess potential juror bias.

##### b.     Analysis

Effective December 1, 2011, Rule 411 was amended to read as follows:

> Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully.  But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control.

FED. R. EVID. 411.[3]  Van DeWalle represents that she has no intent to offer any such evidence, even to attempt to prove a witness's bias or prejudice.  However, Rule 411 does not address her proposed voir dire question to assess potential juror bias.  *Id.*

---

[3] Rule 411 formerly provided as follows:

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of

Van DeWalle asserts that such an inquiry of prospective jurors is authorized by *Lamaak v. Brown*, 147 N.W.2d 915, 917 (Iowa 1967), and *Anderson v. City of Council Bluffs*, 195 N.W.2d 373, 377 (Iowa 1972). In *Lamaak*, the Iowa Supreme Court upheld denial of the plaintiff's motion for a mistrial based on defense counsel's questions to prospective jurors about any interest in any insurance company. 147 N.W.2d at 917. The court explained,

> We have repeatedly held that latitude in voir dire examination within the sound discretion of the trial court should be permitted. Proper inquiry as to connection with insurance companies has been approved. *Mortrude v. Martin*, 185 Iowa 1319, 1332, 172 N.W. 17; *Raines v. Wilson*, 213 Iowa 1251, 239 N.W. 36; *Kaufman v. Borg*, 214 Iowa 293, 242 N.W. 104; and *Montanick v. McMillin*, 225 Iowa 442, 280 N.W. 608. The court might well have told the jury that whether or not any party had any kind of insurance had nothing to do with the issues to be decided by the jury. *Price v. King*, 255 Iowa 314, 321, 122 N.W.2d 318; *Youngs v. Fort*, 252 Iowa 939, 946, 109 N.W.2d 230.
>
> There is no record before us indicating any abuse of discretion or error in the court's ruling.

*Lamaak*, 147 N.W.2d at 917.

In *Anderson*, the Iowa Supreme Court rejected the defendants' argument for a new trial, based on the plaintiff's counsel's question to prospective jurors, much like the one that Van DeWalle proposes here, "Are you or any member of your family

---

agency, ownership, or control, or bias or prejudice of a witness.

The changes are "intended to be stylistic only," and not "to change any result in any ruling on evidence admissibility." FED. R. EVID. 411, Advisory Committee Notes, 2011 Amendments.

employees or stockholders or officers or directors of the Western Insurance Company of Fort Scott, Kansas?" 195 N.W.2d at 377. The court explained,

> Litigants have the right to examine prospective jurors on voir dire in order to enable them to select a jury composed of persons qualified and competent to judge and determine the facts in issue without bias, prejudice or partiality. The extent of such examination cannot be governed by fixed rules, but is subject to the sound discretion of the trial court, the exercise of which we will not interfere with unless abuse is shown. *Elkin v. Johnson*, 260 Iowa 46, 49, 50, 148 N.W.2d 442, 444, and citations.

> We have repeatedly approved proper inquiry of prospective jurors regarding interest in or connection with insurance companies. *Lamaak v. Brown*, 259 Iowa 1324, 1328, 147 N.W.2d 915, 917, and citations. In *Montanick v. McMillin*, 225 Iowa 442, 450, 280 N.W. 608, 613, where reference was made to a particular insurance company we quote the following from *Raines v. Wilson*, 213 Iowa 1251, 1262, 239 N.W. 36, 40: "The question which we are now considering has been passed upon by numerous courts, including our own. The overwhelming majority of the courts sustain the right of counsel for the plaintiff, in a personal injury case, so long as he acts in good faith for the purpose of obtaining information upon which to exercise his peremptory challenges of the jurors and not for the purpose of informing the jury that an insurance company is back of the defendant of record, to interrogate prospective jurors by one form or another of questions, which respect to their interest in, or connection with, insurance companies. *See* 56 A.L.R., pages 1456, 1457, 1458. Twenty-seven of our sister states have passed upon the question and sustained the plaintiff's right to propound an inquiry such as was the one propounded in the instant case. *See* Note in 56 A.L.R., pages 1456-1458, and cases there cited. It is clearly apparent that, if a litigant were denied the right to propound the question asked the jurors in the instant case, he might be compelled to accept a juror who is a stockholder in an

insurance company, and probably the very one having defendant's liability insured."

> Nothing in this record shows want of good faith on the part of plaintiff's counsel. He was not guilty of any persistent course or effort to impress upon the jury that defendants' liability was insured. We must note jurors are aware most people carry liability insurance and that fact is not to influence their verdict. We find no abuse of the trial court's discretion.

*Anderson*, 195 N.W.2d at 377.

In contrast, the Eighth Circuit Court of Appeals upheld a district court's refusal to allow the plaintiffs to voir dire the jury panel regarding any potential bias in favor of the defendant's insurance carrier in *Hallberg v. Brasher*, 679 F.2d 751, 753-54 (8th Cir. 1982). The court explained:

> The specific voir dire question propounded by the plaintiffs was "whether any members had a financial interest in or whether they were employed by MFA Mutual Automobile Insurance Company?" (emphasis supplied). *This court has stated that voir dire questions regarding a specific insurance carrier are generally inappropriate inasmuch as they tend to overemphasize the issue of insurance. Labbee v. Roadway Express, Inc.*, 469 F.2d 169, 172 (8th Cir. 1972). Furthermore, in this case, voir dire was conducted by counsel rather than by the court. *Although the trial court refused the plaintiffs' proffered question, it in no way expressed or intimated a restriction upon their ability to pursue a more generalized line of inquiry regarding insurance*, see *Kiernan v. Van Schaik*, 347 F.2d 775, 780-82 (3d Cir. 1965), *devoid of any reference to a specific insurance carrier.* The trial court's refusal of the plaintiffs' voir dire request was, therefore, well within its sound discretion, *see Labbee v. Roadway Express, Inc., supra*, 469 F.2d at 172.

*Hallberg*, 679 F.2d at 754 (emphasis added).

I conclude that *Hallberg* properly guides my discretion on this evidentiary question. I do not dispute the general propriety of inquiries about juror bias relating to insurance and insurance companies and, particularly, inquiries designed to address the possibility that jurors might be biased by employment or some other financial relationship with a particular insurance company. On the other hand, there is, in my view, the potential for prejudice arising from the identification of a specific insurance company as part of the inquiry, because doing so would tend to overemphasize the issue of insurance and raise the inference that the particular insurance company named was the defendant's liability insurer. *See id.* I believe that a more generalized line of inquiry regarding insurance is appropriate. *See id.* (citing *Kiernan*, 347 F.2d at 780-82); *see also Lamaak*, 147 N.W.2d at 917 (approving an inquiry during voir dire as to whether some jurors had "any interest in any insurance company"). Thus, while it is improper for Van DeWalle to ask prospective jurors, "Are you or any member of your family an employee, stockholder, director, or officer of Employers Mutual Casualty Company or EMC Insurance Companies?" it would not be improper for her to ask if any juror or close family member is an employee, agent, stockholder, officer, or director of any insurance company. It would also be appropriate to ask jurors who responded yes to that question the name of the specific insurance company with which there is such an affiliation and whether that affiliation is likely to affect the potential juror's judgment in the case. These questions would provide the specific information that the plaintiff's counsel wants to assess potential bias of potential jurors, while not overemphasizing either the issue of insurance or indicating the particular insurance company that is the District's liability insurer.

Therefore, that part of the District's Motion In Limine seeking to exclude *evidence* of liability insurance, pursuant to Rule 411, is granted, but the plaintiff may ask during jury selection if any juror or close family member is an employee, agent,

stockholder, officer, or director of any insurance company and may follow-up with jurors answering yes by asking the name of the specific insurance company with which there is such an affiliation and whether that affiliation is likely to affect the potential juror's judgment in the case.

### 2.   *Evidence of Slagle's alleged racist statements to others*

Next, the District seeks to exclude evidence concerning Slagle's alleged racist statements to others out of Van DeWalle's presence, whether the evidence is offered through the testimony of Van DeWalle or anyone else.   Although Van DeWalle represents that she will not offer such evidence through her own testimony, she argues that such evidence is admissible, if offered through persons who heard such statements.

### a.   *Arguments of the parties*

The District argues that any testimony from Van DeWalle that other District employees allegedly heard Slagle make racially derogatory statements outside of Van DeWalle's presence should be excluded as hearsay, pursuant to Rules 801 and 802. The District also argues, but in considerably more detail, that testimony from persons who heard Slagle make the alleged remarks is also inadmissible, pursuant to 403, as of little or no probative value and as unfairly prejudicial, confusing, misleading, and a waste of time.

More specifically, the District argues that Slagle's statements made to others outside of Van DeWalle's presence could not have contributed to any racially hostile work environment to which Van DeWalle was subjected.   The District points out that the sole basis for Van DeWalle's racial harassment claim is Slagle's comments to her on November 5, 2008.   The District also argues that Slagle's other alleged remarks are not relevant to any discrimination claim, because the only action on which such a claim is based is the decision not to renew Van DeWalle's contract, and I have already ruled that there is not sufficient evidence to raise a genuine issue of material fact that Slagle's

alleged racial animus was a motivating factor in the non-renewal decision. Finally, the District argues that Slagle's alleged statements are not relevant to Van DeWalle's retaliation claim, because no racial animus is required to prove retaliation, and Slagle was not the decision-maker as to non-renewal of Van DeWalle's contract.

In response, Van DeWalle argues that evidence of Slagle's alleged racist comments from persons who heard those comments is relevant, because that evidence makes more credible Van DeWalle's complaint of racial harassment. She also argues that the jury must decide if her complaints of racial harassment were made in good faith, and corroboration of other racist comments by Slagle would suggest that Van DeWalle's complaints were made in good faith. Thus, Van DeWalle argues that this evidence is relevant to her retaliation claim. She also argues that the risk that such evidence is unfairly prejudicial or otherwise excludable under Rule 403 is "minimal."

### b.    Analysis

#### i.    Admission through Van DeWalle's testimony

Van DeWalle's testimony about what someone else told her that Slagle said in that person's presence is hearsay, because it is testimony of an out-of-court declaration offered for the truth of the matter, that is, that the other person did tell Van DeWalle that Slagle said something. *See* FED. R. EVID. 801. Van DeWalle has not attempted to show that such testimony falls within an exception to the hearsay rule and represents that she will not offer such testimony. Therefore, as Van DeWalle apparently concedes, she cannot testify as to what someone told her Slagle said out of her presence.

#### ii.    Admission through testimony of others

The question still in dispute is whether evidence of Slagle's alleged racist comments to others, outside of Van DeWalle's presence, is admissible through the

testimony of persons who heard those statements. That question requires rather more analysis.

The Eighth and other Circuit Courts of Appeals have reasoned that whether racially (or sexually) derogatory statements made outside of the plaintiff's presence were *known* to the plaintiff at the time that she was allegedly harassed is determinative of whether evidence of those statements is relevant to the plaintiff's harassment or hostile environment claim. For example, in *Carter v. Chrysler Corp.*, 173 F.3d 693 (8th Cir. 1999), the Eighth Circuit Court of Appeals held that the plaintiff had produced sufficient evidence from which a factfinder could reasonably conclude that she experienced a hostile work environment motivated by her sex or race, including evidence of sexually suggestive graffiti in a men's restroom that the plaintiff had not seen, but had been told about. 173 F.3d at 701. As the court explained,

> Chrysler contends that Carter knew of the graffiti only through hearsay, but there is no dispute that she heard about its existence during the time in which she experienced harassment. It is thus relevant on whether a hostile environment existed and whether Carter reasonably perceived other conduct to be hostile or abusive. *See Schwapp v. Town of Avon*, 118 F.3d 106, 111-12 (2d Cir. 1997) (allowing evidence of racially derogatory comments made outside plaintiff's presence).

*Carter*, 173 F.3d at 701 n.7; *see also Schwapp*, 118 F.3d at 111 (concluding that racially derogatory comments made outside of the plaintiff's presence were relevant, only if the work environment was impacted by the plaintiff learning of the comment secondhand). Thus, evidence of derogatory statements made outside of the plaintiff's presence, but nevertheless known to the plaintiff at the time that she was allegedly harassed, is relevant to show a hostile or harassing environment.

On the other hand, in cases where the plaintiffs did not hear and were not aware of the alleged derogatory statements of the alleged harasser, courts have been less

willing to consider such evidence as relevant to a harassment claim. Specifically, the Seventh Circuit Court of Appeals concluded that, where the plaintiff's supervisors had referred to her in explicit, derogatory, and sexist terms, but such references were made outside of the plaintiff's presence and there was no evidence that she was aware of them during the period of her employment, those statements did not amount to a hostile work environment. *Wittaker v. Northern Ill. Univ.*, 424 F.3d 640, 645 (7th Cir. 2005). That court stated the rule to be that "an objectively hostile work environment will not be found where '[m]ost of the conduct that forms the basis of [a plaintiff's] claim consists of derogatory statements made by supervisors or co-workers out of her hearing,' and the rest is 'isolated and not particularly severe.'" *Id.* (quoting *Mannie v. Potter*, 394 F.3d 977, 983 (7th Cir. 2005)); *see also Thompson v. Memorial Hosp. of Carbondale*, 625 F.3d 394, 401 (7th Cir. 2010) (statements from one alleged harasser that the plaintiff's children would look like black beans in a jar and from another harasser daring the plaintiff to call him a racist "took place outside [the plaintiff's] presence" and, therefore, were not sufficiently severe or pervasive to be actionable under Title VII (citing *Mannie*, 394 F.3d at 983)).

Here, neither party has identified with any specificity the racist comments that Slagle allegedly made to others, let alone when such statements were purportedly made or when Van DeWalle learned of them. Under these circumstances, I cannot determine whether the alleged comments are admissible to show that Van DeWalle was subjected to a hostile environment.

The Eighth Circuit Court of Appeals has also held that "sexist statements" were "immaterial" to a gender discrimination claim, where "they were made by nondecisionmakers and were unrelated to the decisional process itself." *See Wells v. SCI Mgmt., L.P.*, 469 F.3d 697 (8th Cir. 2006). Again, the parties have failed to provide sufficient information about what, if any, relationship Slagle's alleged racist

statements to others might have had to the decision-making process leading to Van DeWalle's termination. Similarly, while Van DeWalle is correct that, to establish a § 1981 retaliation claim, she must show, *inter alia*, that she had "a good faith reasonable belief that h[er] employer engaged in a discriminatory employment practice," *see Evans v. Kansas City Mo. Sch. Dist.*, 65 F.3d 98, 100 (8th Cir. 1995), without specific information about what Slagle's alleged comments were and when Van DeWalle learned about them, I cannot determine whether they have any relevance to whether Van DeWalle's complaints of racial harassment were in "good faith."

I am also unable to determine, on the present record, whether the alleged racist comments by Slagle satisfy the requirements for admission pursuant to Rule 404(b)(2) or run afoul of Rules 404(a) and 404(b)(1). More specifically, I cannot determine whether the statements are "bad acts" evidence to show Slagle's motive, intent, and bias, within the meaning of Rule 404(b)(2) of the Federal Rules of Evidence; evidence of Slagle's character or character trait (racial animus), offered simply to prove that, on a particular occasion, Slagle acted in accordance with that character or trait (when she made the alleged comments to Van DeWalle), which is prohibited by Rule 404(a); or evidence of "bad acts" (Slagle's alleged racist comments to others) to prove Slagle's character (racial animus) in order to show that, on a particular occasion (when Slagle made the alleged remarks to Van DeWalle), Slagle acted in accordance with that character (racial animus), which is prohibited by Rule 404(b)(1). *See* FED. R. EVID. 404(b)(1). I also cannot determine whether any probative value of such evidence is substantially outweighed by its potential for undue prejudice, confusion of the issues, and a "mini-trial" on whether Slagle said any of the things alleged on any of the occasions alleged, *see* FED. R. EVID. 403 (permitting exclusion of probative evidence on the basis that it may mislead or confuse the jury); *Chism*, 638 F.3d at 642 (recognized that Rule 403 may properly be used to exclude evidence that could result in

a "trial within a trial" that is not justified the probative value of such evidence); *see also Clark v. Martinez*, 295 F.3d 809, 814 (8th Cir. 2002) (Rule 403 applies to evidence otherwise admissible pursuant to Rule 404(b)), or whether a limiting instruction is likely to be sufficient to overcome any potential prejudice. *See, e.g, Cowling*, 648 F.3d at 699 ("Moreover, the risk of unfair prejudice was reduced by a cautionary instruction to the jury, given when the evidence was first admitted.").

In short, where neither party has identified with any specificity the alleged racist comments that Slagle made to others, let alone when such statements were purportedly made or when Van DeWalle learned of them, and whether they have any relationship to the decision-making process, I cannot determine whether the alleged comments are admissible to show that Van DeWalle was subjected to a hostile environment or for any other purpose. Therefore, this part of the District's Motion In Limine will be denied without prejudice to timely reassertion when such evidence is offered or becomes imminent during trial.

### III.   CONCLUSION

Upon the foregoing,

1.    Plaintiff Van DeWalle's May 15, 2012, Motion In Limine (docket no. 19), is **granted**, as follows:

a.    The motion is **granted** as undisputed as to evidence of Van DeWalle's prior civil and criminal history;

b.    The motion is **granted** to the extent that evidence of unemployment compensation that Van DeWalle received will *not* be admissible in proceedings before the jury, but such evidence may be admissible in proceedings before the court; and

c.     The motion is **granted** as to evidence of photographs and testimony regarding Slagle's Korean and African-American relatives; and

2.     The defendant District's May 16, 2012, Motion In Limine (docket no. 20), is **granted in part and denied in part**, as follows:

a.     The motion is **granted** as undisputed as to evidence of settlement negotiations;

b.     The motion is **granted** as to *evidence* of liability insurance, but the plaintiff may ask during jury selection if any juror or close family member is an employee, agent, stockholder, officer, or director of any insurance company and may follow-up with jurors answering yes by asking the name of the specific insurance company with which there is such an affiliation and whether that affiliation is likely to affect the potential juror's judgment in the case; and

c.     The motion is

i.     **granted** as to evidence concerning Slagle's alleged racist statements to others, out of Van De Walle's presence, from Van DeWalle; but

ii.     **denied** without prejudice to timely reassertion during trial as to evidence concerning Slagle's alleged racist statements to others, out of Van DeWalle's presence, from persons who heard those statements.

IT IS FURTHER ORDERED that, to avoid exposure of potential jurors to information about challenged evidence, this ruling shall be sealed until ten days after

completion of the trial or notice of any settlement, unless a party files a motion within that ten-day period showing good cause why the ruling should remain sealed.

**IT IS SO ORDERED**.

**DATED** this 13th day of June, 2012.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA